FREDERICKA HOMBERG WICKER, Judge.
laDavid Bailey, claimant, appeals the Office of Worker’s Compensation (OWC) judgment dismissing his disputed claim for benefits. Mr. Bailey argues the OWC judge erred both in finding he did not prove that he suffered a disabling accident on January 9, 2013, and in failing to award him attorney’s fees and penalties. For the following reasons, we find Mr. Bailey’s assignments of error to be without merit, and affirm the OWC’s judgment.

PROCEDURAL HISTORY

On February 8, 2013, Mr. Bailey filed a disputed claim for worker’s compensation benefits against his former employer, Jefferson Parish, and moved to compel Jefferson Parish to pay for his initial medical evaluation and diagnostic testing.[1]
*97 On March 4, 2013, Jefferson Parish filed an exception of no cause of action and an opposition to Mr. Bailey’s motion to compel. On March 8, 2013, after a hearing on these matters, the OWC judge denied Jefferson Parish’s exception and ^deferred her ruling on Mr. Bailey’s motion to compel. Jefferson Parish filed its answer to Mr. Bailey’s disputed claim for worker’s compensation benefits on March 13, 2013. In it, Jefferson Parish admitted that it did employ Mr. Bailey and that it did not pay him compensation. On June 13, 2013, Jefferson Parish filed a peremptory exception of prescription. On June 26, 2013, the OWC judge held a hearing on this exception and Mr. Bailey’s motion to compel. After hearing the parties’ arguments and considering the evidence, the OWC judge denied Jefferson Parish’s exception of prescription and again deferred a ruling on Mr. Bailey’s motion to compel. The OWC judge memorialized her ruling in a written judgment issued on June 28, 2013.
A trial on the merits of Mr. Bailey’s claim was held on July 18, 2013. On August 15, 2013, the OWC judge issued a written judgment on the merits, with accompanying reasons, in favor of Jefferson Parish and dismissed Mr. Bailey’s claim. The judgment further ordered each party to bear its own costs.
Mr. Bailey moved for a new trial on August 20, 2013. The OWC judge denied this motion after a hearing on September 18, 2013. Mr. Bailey then moved to appeal the OWC judge’s August 15, 2013 judgment. The OWC judge granted this appeal.

FACTS

The parties do not seriously dispute the following facts: prior to the January 9, 2013 accident now at issue, Mr. Bailey suffered several accidents which caused him lower back pain. On January 9, 2013, Jefferson Parish employed Mr. Bailey as a foreman who was responsible for driving a crew to and from various work sites and supervising that crew. On that day, Mr. Bailey left his work site and drove to get lunch. On his drive back, Mr. Bailey’s right leg went numb. This rendered him unable to apply the vehicle’s breaks and caused him to crash into |4another vehicle. After this accident, Mr. Bailey continued to attend work for about a month without missing any days. After Mr. Bailey pursued his claim for worker’s compensation on February 4, 2013, Jefferson Parish suspended his employment pending a medical clearance to work. Mr. Bailey’s employment with Jefferson Parish was later terminated. In dispute is the essential question of whether Mr. Bailey suffered a compensable injury under worker’s compensation law.
At trial, Mr. Bailey admitted to having three or four prior automobile accidents, including accidents in 2008 and in 2010. Mr. Bailey testified that, since at least his 2008 accident, the primary effect of his prior accidents was pain in his lower back. Mr. Bailey admitted that for several years prior to the January 9, 2013 accident now at issue, he also complained of pain shooting into his lower extremities. To combat this pain, Mr. Bailey took multiple Vicodin pills each day for several years. Additionally, Dr. Tarun Jolly treated Mr. Bailey for conditions arising from Mr. Bailey’s 2010 accident. These treatments occurred during a period of time immediately prior to the January 9, 2013 accident. Mr. Bailey had, before this accident, scheduled a visit to Dr. Jolly on January 10, 2013, for injections to treat his existing diagnosis of “lumbar degenerative disc disease with radiculopathy.” Mr. Bailey testified that, despite these prior accidents, the resulting *98 pain, and treatments, he was able to perform all of his job’s duties.
Teresa Mader Shurley testified that she handled worker’s compensation matters related to Mr. Bailey for Jefferson Parish.[2] Ms. Shurley testified that she was familiar with Mr. Bailey because she handled Jefferson Parish’s subrogation claim arising from Mr. Bailey’s 2010 accident. In connection with that 20101 ¡¡accident, Jefferson Parish paid only for Mr. Bailey’s emergency care.[3] Ms. Shurley testified that, in connection with a tort lawsuit arising from this 2010 accident, Mr. Bailey received $5,000 in reimbursement for medical costs and a total settlement amount of $50,000. After this, Jefferson Parish settled its claim for reimbursement from Mr. Bailey for $4,000. According to Ms. Shurley, Jefferson Parish was not paying for Mr. Bailey’s treatments immediately prior to his January 9, 2013, accident.
On the morning of his accident, Mr. Bailey was on Jefferson Parish’s work site. According to Mr. Bailey, he had not taken a Vicodin pill that day. He left that work site, in a pickup truck owned by Jefferson Parish, to get lunch. This was the pickup truck Mr. Bailey used in his employment by Jefferson Parish to move his crew around between job sites. Mr. Bailey was not paid during his trip to pick up his lunch. Recalling his drive back to his work site, Mr. Bailey testified:
there was a vehicle right in front of me. It stopped at the stop sign and there was a pain leaving my back that shot down my right leg causing my right leg to go numb. Therefore, when I tried to hit the brake, I couldn’t move my right leg and that caused me to run into the back of the vehicle.
After this accident, Mr. Bailey immediately felt pain in his lower back. He immediately reported the accident to his supervisor, Jimmy Fisher, and then finished his drive back to his work site.
Mr. Bailey stated that the level of pain in his lower back increased after this accident. He testified that while he did not have problems with his hips or his knees before his accident, after his accident, he has pain in both his hips when he walks. Mr. Bailey also testified that since this accident, he has a new pain in his thoracic area when he turns his head or lies down.
IfiOn the day after this accident, Mr. Bailey kept his pre-existing appointment with Dr. Jolly for pain treatment. Mr. Bailey testified that, at his visit with Dr. Jolly, he told Dr. Jolly about his accident the previous day, and that Dr. Jolly informed him that his leg went numb because of his pre-existing back condition.
For about a month after his accident, Mr. Bailey continued to report to work. Mr. Bailey testified that during this month, he suffered increased pain when he was driving to his work site. However, he admitted that he continued to be able to drive.
On February 4, 2013, Mr. Bailey called Ms. Shurley, informing her of his January 9, 2013, accident for the first time. After Mr. Bailey’s phone call, Ms. Shurley reviewed Mr. Bailey’s claim and denied it. Ms. Shurley testified that as of her February 4, 2013 conversation with Mr. Bailey, she understood that Mr. Bailey did not miss any work between the date of his *99 accident, January 9, 2013, and that date, February 4, 2013. Ms. Shurley testified that she also reviewed Mr. Bailey’s medical records, from both before and after this accident. These medical records showed that Mr. Bailey underwent treatment for an injury to his back before this accident. Furthermore, Dr. Jolly’s treatment records from January 10, 2013, did not reflect that Mr. Bailey told Dr. Jolly of an accident the previous day. When further pressed for reasons why she denied Mr. Bailey’s claim, Ms. Shurley testified:
He was in pain before he even had the wreck. And there was nothing that caused the initial pain, there was no accident. Now, there was an accident that happened after the pain.... I felt that the pain prior caused the accident, but nothing caused the pain .... he had some kind of onset of pain. I don’t know what brought the onset of pain, there was no accident to cause the initial pain.... There isn’t any documentation supporting a new injury.... And as far as an exacerbation or anything, I didn’t have any medical documentation at the time.
|7Ms. Shurley testified that she originally set up an appointment to get a second medical opinion as to Mr. Bailey’s condition on April 30, 2013, but that neither Mr. Bailey nor his attorney received notice of that appointment. Ms. Shurley testified that Jefferson Parish did not pay any amounts to Mr. Bailey for medical benefits, mileage reimbursement, or medication.
Jefferson Parish sent a letter to Mr. Bailey, dated February 8, 2013, which immediately placed Mr. Bailey on leave until he provided the Parish with medical documentation that he was able to safely perform his job.
On February 11, 2013, Dr. William Alden physically examined Mr. Bailey. Dr. Alden explained to Mr. Bailey that his problems were due to bulging discs at the L5-S1 level in his back. Mr. Bailey admitted on cross-examination that he has had problems with his discs at the L5-S1 since 2008. Medical records revealed that after examining Mr. Bailey, Dr. Alden concluded that, as a result of Mr. Bailey’s motor vehicle accident on January 9, 2013, Mr. Bailey sustained:
1. Lumbar strain with spasm-exacerbation
2. Right-sided sciatica
3. Bilateral knee pain-exacerbation
4. Bilateral hip pain-exacerbation
5. Thoracic strain
Mr. Bailey testified that Dr. Alden ordered him to undergo an MRI because Dr. Alden believed that his back deteriorated. Dr. Alden’s medical records show that he recommended that Mr. Bailey undergo further treatments, including X-rays and physical therapy. Mr. Bailey testified that Dr. Alden cleared him to return to work, but ordered that he do “no lifting, no bending, and no sitting for a long period of time and no walking for a long period of time.” Dr. Alden’s medical records reflect a recommendation that Mr. Bailey could “return to work on light duty restrictions.” Counsel for Mr. Bailey sent a copy of Dr. Alden’s report to counsel for Jefferson Parish on March 7, 2013.
|sMr. Bailey testified that “after I got the ADA paper filled out by the doctor ..., the director stated I couldn’t come back to work until the doctor said something different. So, therefore, I stayed out of work for like two ... or three months without anything coming in.” According to Mr. Bailey, this was the reason he resigned. Mr. Bailey testified that he never received payments for a worker’s compen *100 sation disability or a salary continuation.[4]
After leaving his employment with Jefferson Parish, Mr. Bailey continued to suffer pain. At one point, he found work at St. James Stevedoring. However, after working a week and four days, he suffered a great increase in his back pain and was unable to continue that work. Mr. Bailey requested light duty work from that employer, and in response, was fired. Mr. Bailey testified that since being fired from St. James Stevedoring, the level of pain he feels has diminished and returned back to the level it became after his January 9, 2013 accident. Mr. Bailey testified that from January of 2013, through the time of the trial, in July of 2013, he has suffered a constant, heightened level of pain. He also claimed that he continues to suffer from numbness in his leg. Mr. Bailey testified that his pain is worst when he gets out of bed in the morning. He further testified that the medications prescribed to him do not prevent him from driving.
Dr. Robert Steiner was retired, but he examined Mr. Bailey on June 18, 2012, to render a second medical opinion for Jefferson Parish on Mr. Bailey’s condition. He testified at trial, by deposition, both as to his opinion as an orthopedic surgery expert and as to the results of his examination of Mr. Bailey. Dr. Steiner saw Mr. Bailey only on the June 18th occasion. Dr. Steiner also reviewed medical records of Mr. Bailey. As a result of his examination and his | flmedical records review, Dr. Steiner produced a report on Mr. Bailey which was admitted without objection.
Based on his review of the medical records, Dr. Steiner testified he came to know that Mr. Bailey “had a lengthy history of preexisting back and leg pain.” Dr. Steiner determined that Mr. Bailey had low back pain, radiculopathy, and right sciatica that existed before January 9, 2013. Dr. Steiner found that Mr. Bailey was treated by Dr. Jolly for right leg pain before his accident. Dr. Steiner testified that Mr. Bailey required no emergency room care as a result of the January 9, 2013 accident. Mr. Bailey was later treated by Dr. Alden who recommended a lumbar MRI. Dr. Steiner did not see any indication for treatment specifically related to the incident of January 9, 2013.
Dr. Steiner testified that during his examination of Mr. Bailey, Mr. Bailey was:
complaining of low back pain ... a little worse than prior to the accident. He reported occasional shooting pain in his right leg. He reported numbness in his right thigh. No lower extremity weakness. There were no other orthopedic complaints.... Upon palpation of his lower back, there was tenderness in the midline. There was no lumbar spasm. There was no sciatic notch or sacroiliac tenderness. Active motion of his lower back was limited.... The sitting at supine straight leg raise signs caused low back pain but no sciatica. Flexion, abduction, external rotation test of his hips caused back pain bilaterally.
Dr. Steiner opined that Mr. Bailey’s symptoms “were consistent with his pre-injury condition” and that he had “not been provided with any evidence in any of these records to document worsening of his preexisting condition....” Dr. Steiner opined that all of Mr. Bailey’s current treatment, and ongoing treatment, was related to his condition as it existed prior to January 9, 2013. Dr. Steiner found no new injuries, and testified that “[t]here is *101 nothing in the medical record to document that his preexisting condition worsened.” Dr. Steiner concluded that Mr. |inBailey could, after his January 9, 2013 accident, perform the work he was performing prior to that accident.

DISCUSSION

Mr. Bailey appeals the judgment finding that he did not prove his claim and dismissing his suit. Mr. Bailey argues the OWC judge erred when she: (1) failed to find that Mr. Bailey met his burden of proof that he suffered a disability as a result of his January 9, 2013 work accident; and (2) failed to award Mr. Bailey any benefits, penalties, or attorney’s fees for Jefferson Parish’s failure to reasonably controvert his claim for supplemental earnings benefits. For the following reasons, we find Mr. Bailey’s assignments of error to be without merit and affirm the judgment.

Standard of Review

In worker’s compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC judge’s findings of fact is the “manifest error-clearly wrong” standard. Dean v. Southmark Constr., 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117, citing, Brown v. Coastal Constr. Engg, Inc., 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10. Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Id. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id., citing, Robinson v. North Am. Salt Co., 02-1869 (La.App. 1 Cir. 6/7/03), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when |n convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.

Assignment One

In support of his first assignment of error, arguing the OWC judge erred in failing to find that Mr. Bailey proved that he suffered a disability as a result of his January 9, 2013 accident, Mr. Bailey points to Dr. Alden’s medical records which report that he suffered various new or exacerbated symptoms as a result of his accident. Mr. Bailey also points out that Dr. Alden issued him work restrictions after his accident, which he had not had prior to his accident. Mr. Bailey also attacks the testimony of Dr. Steiner by pointing out that Dr. Steiner did not notice Dr. Alden’s diagnosis of Mr. Bailey having new and worsened symptoms.
In opposition, Jefferson Parish argues that Dr. Steiner’s expert testimony, along with the other medical evidence, reasonably established that Mr. Bailey did not suffer new or worsened symptoms as a result of his accident. Jefferson Parish also argues that the OWC judge’s conclusion is supported by Mr. Bailey’s own indication on the accident report which he filled out, that he did not need further treatment and that he did not anticipate that this injury would cause him to miss work.
As this Court has recently explained:
Jurisprudence holds that because an employer takes his employee as he finds him, ‘a preexisting condition does not prevent recovery through workers’ compensation.’ Tate v. Cabot Corp., 01-1652 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, 461, citing, Curtis v. Wet Solutions, Inc., 98-0789 (La.App. 3 Cir. 12/9/98), 722 So.2d 421. Aggravation of a preexisting *102 injury may constitute a disabling injury when, for example, the plaintiff begins to suffer new symptoms after the second workplace accident. Id. [ ... ] The Third Circuit explained in Tate, supra:
[a] pre-existing disease or infirmity does not disqualify the claimant from receiving benefits if the workplace accident 112aggravated, accelerated, or combined with the disease to produce the disability for which compensation is claimed. Thus, the element of causation is satisfied if the employee’s work-related accident was a factor in bringing about the employee’s disabled status. Whether a causal relationship exists between the disability and the employment is a question of fact. The hearing officer’s determination in this regard cannot be reversed unless it is manifestly erroneous based on examination of the record as a whole.
The employee’s workplace accident is presumed to have caused or aggravated her disability when she proves that: (1) before the accident, she had not manifested disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and (3) there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. Once an employee establishes the presumption of a casual [sic] relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was not caused by the work accident.
Thus, ‘[t]he presumption of causation may attach to a claimant who exhibited symptoms of her allegedly disabling illness in the distant past provided that she had suffered no such symptoms immediately prior to her workplace accident.’ Id. at 461, citing, Rideaux v. Franklin Nursing Home, 95-0240, p. 5 (La.App. 3 Cir. 11/22/95), 664 So.2d 750, 755.
Hotard v. Murphy, Rogers, Sloss & Gambel, 11-1143, pp. 9-10 (La.App. 5 Cir. 5/31/12), 97 So.3d 407, 412.
Turning to the instant case, Mr. Bailey admits the he suffered pain in his lower back and that he was receiving ongoing treatment for that pain for a period of several years immediately prior to his accident. Wfiiile Mr. Bailey now contends that his pain is at a higher level than before his accident, Mr. Bailey admits that he is currently suffering the same type of pain. After considering Mr. Bailey’s own testimony, the competing testimony of Dr. Steiner, and the medical records, we cannot say that the OWC judge manifestly erred in determining that Mr. Bailey failed to prove that he suffered a compensable injury as the result of his accident on January 9, 2013. Even if Mr. Bailey suffered some additional injury because of 113his January 9, 2013 accident, we cannot say the OWC judge manifestly erred by failing to find any such injury, more probably than not, caused Mr. Bailey to be disabled. Accordingly, we find Mr. Bailey’s first assignment of error to be without merit.

Assignment Two

In his second assignment, Mr. Bailey argues the OWC judge erred by failing to award him any benefits, penalties, or attorney’s fees for Jefferson Parish’s failure to reasonably controvert his claim for supplemental earnings benefits. We disagree.
An employee is entitled to receive supplemental earnings benefits if, inter alia, an injury to that employee results in his or her “inability to earn wages equal to ninety percent or more of wages at the time of *103 injury.” La. R.S. 23:1221(3)(a)(i). An employee who is entitled to receive supplemental earnings benefits becomes entitled to certain penalties and attorney’s fees, under section 1201 of Revised Statute Title 23, if his or her employer fails to pay the supplemental earnings benefits due to the employee in accordance with that section. La. R.S. 23:1201. Here, given our finding above that the OWC judge did not manifestly err in finding that Mr. Bailey did not suffer an injury which caused his inability to earn wages, we find this assignment of error to also be without merit.[5]

¿CONCLUSION

For the foregoing reasons, we find Mr. Bailey’s assignments of error to be without merit and affirm the August 15, 2013 judgment.

AFFIRMED.

. Mr. Bailey also filed a claim against Jefferson Parish’s third party administrator for worker’s compensation claims, Cannon Cochran Management Services, Inc. CCMS thereafter filed an exception of no cause of action. After the OWC hearing on March 8, 2013, the judge rendered an interlocutory judgment which granted CCMS's exception and dismissed CCMS as a defendant in this matter. *97 Mr. Bailey did not appeal the dismissal of CCMS from this action.

. Ms. Shurley was a claims representative for CCMS.

. Ms. Shurley also executed an affidavit in which she stated that she reviewed her corn-pany’s records and found that Mr. Bailey did not receive any temporary total disability benefits or supplemental earnings benefits for either his 2008 or 2010 accidents.

. Mr. Bailey testified that as a foreman for Jefferson Parish, he was a full-time employee who occasionally did overtime work. Ms. Shurley testified that she calculated Mr. Bailey's average weekly wage to be $1,523.00.

. At oral argument, Mr. Bailey’s attorney also argued that the OWC judge did not follow the law as prescribed in La. R.S. 23:1121(B)(1) by failing to grant his motion to compel a medical evaluation of Mr. Bailey. This argument was not briefed on appeal and is therefore waived. Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4). However, even were we to consider this argument, we would find it to be without merit. Here, Jefferson Parish has shown "good cause” for its refusal to authorize treatment; therefore, the OWC judge was not mandated to order Jefferson Parish to authorize a medical evaluation by the claimant’s choice of physician.